We'll continue with our arguments in the fourth case of the morning. This is Appeal 22-2573, the United States v. Edwin, is it Agbi? Agbi, Your Honor. Agbi, okay. Mr. Tatum, nice to see you. You may begin. Good to see you as well, Your Honors. Thank you. May it please the Court, my name is Finus Tatum IV and I represent Edwin Agbi. This Court should vacate the two-level sentencing enhancement for obstruction of justice because the government failed to meet its burden of proving Mr. Agbi willfully obstructed justice when he submitted his Nigerian police report in support of his defense while he was responding to the government's motion to eliminate with respect to his duress defense. And because of this, we are asking for the Court to remand this matter for resentencing. Alternatively, the Court should vacate Mr. Agbi's convictions because the government failed to prove his knowledge and intent, which are essential elements to his underlying convictions. Your Honors, Mr. Agbi was arrested for mail fraud in the spring of 2019. And after his arrest, he made certain statements to his arresting officers. He was subsequently charged for mail fraud and after he was subsequently charged and indicted, he made a proper statement, and that was in the spring of 2019. During the proffer, he was represented by counsel that was not his trial court counsel. Trial court counsel was appointed in the fall of 2021. Prior to trial, the government filed its motion to eliminate with respect to Mr. Agbi's ability to assert his defense, specifically the defense of duress. Sometime after he made his proper statement, Mr. Agbi's family was attacked in Nigeria by uncharged co-conspirators, and his wife had overheard that particular phone call. During the trial, which commenced on February 28, 2022, and concluded on March 2, there was a conference that was held. The United States believed that Mr. Agbi had the police report that was submitted. The United States believed that was false because of the timing that he submitted the report. And then secondly, they had obtained an email from Secret Service contacts in South Africa who had contacted authorities in Nigeria saying that that report was false. Mr. Agbi proffered through his counsel at that time that he believed that he had previously disclosed the attack on his family, and the government had referenced the email. The trial court judge had determined that the police report was false, and Mr. Agbi was subsequently convicted on all the charges, and sentencing was held a month or so later. And during sentencing, the court imposed a two-point obstruction of justice enhancement for the police report. Okay. Can you separate one thing? Or maybe I'm mistaken. I thought the police report issue was not part of the affirmative evidence that the government presented to the jury, you know, that resulted in your client being convicted that way. Okay. But the police report issue came up rather at sentencing for purposes of the obstruction enhancement. Am I right or wrong about that? You are correct. The police report was never given to the jury, Your Honor. All right. So it was never – that's not part of the case in chief. Right. Okay. That all came up at sentencing with respect to that two-level enhancement under 3C. That's correct. What had happened was that the government wanted to bring the issue to the trial court judge's attention, and that's when the trial court judge had determined that, without seeing the email, that the police report was fake. He was given that two-point enhancement during sentencing, and we believe that the district court erred in giving that enhancement, and review of this issue is based upon the clear error standard, which means that this court has to be firmly convinced that the trial court made a mistake. United States Sentencing Guidelines Section 3C.1.1 permits the government to seek a two-level enhancement for obstruction of justice if someone willfully tries to obstruct an administration of justice with respect to their prosecution. The government had the burden of showing this by preponderance of the evidence, and to obtain the enhancement willfully is based upon someone's specific intent, and because this court can't mind read, specific intent is based upon someone's actions. In the United States v. Somalia, this court had decided that when someone submits documents that are clearly false, that also can support an obstruction of justice enhancement. Now, at the trial court level, the government had two particular theories by which Mr. Agby had committed obstruction of justice. The first theory was the timing that he had submitted the police report, and this can be quickly resolved by Application Note 2 to 3C.1.1. Application Note 2, that says that there are certain limitations when you have the obstruction enhancement, and the reason why you have limitations is because you don't want to punish someone that is trying to exercise their Sixth Amendment right to prepare defense, and we believe that that's what the government is doing in this case, is that the government is trying to punish Mr. Agby by trying to, you know, when he asserted that he was trying to claim duress because of what happened to his family in Nigeria, and that's why he continued to participate in conduct. Clear language of Application Note 2 says that you can't punish someone, and then there's also some language in there with respect to someone having a false memory or making a mistake, and if the government is facing the fact that Mr. Agby didn't previously disclose the fact that he had referenced the incident in Nigeria to law enforcement, that was a mistake. It was three years when he proffered the information to the court. Three years had passed since he proffered that information to the court about what happened to his family from the time that he had initially proffered to the government about the facts and circumstances of the case. With regard to the government's second theory, other than the timing issue, the government's theory was that if it could prove that the underlying attack or the incident did not take place, then it should be implied that Mr. Agby knew that the police report was false when he submitted it in support of his response and objection to the motion to limit it. Isn't one of the biggest challenges you have on the obstruction issue the statement that the district court made at sentencing that he would have imposed the same sentence with or without the two-level enhancement? So, under our decision, and I think Carraway and other like cases, in the face of a clear statement like that from a sentencing judge that the sentence would have been the same, how is there any error here? Well, Your Honor, we disagree that the sentencing judge would have sentenced him to the same thing. We understand that the sentencing judge looked at the… Didn't he say that? I'm sorry? Didn't he say that? That he would have sentenced him to the same thing? Yeah. I believe he did, but if that's the case, then I don't believe that the sentencing court would have looked at all of the 3553A actors when he had sentenced Mr. Agby. Of course, you have to look at the nature and circumstances of the offense, which is pretty bad, but then also you have the nature and characteristics of the defendant, and Mr. Agby didn't have any criminal history at the time he was sentenced. So, we believe that the 57 months was the low end of the guideline range, and if this court were to remove or vacate the obstruction of justice, then the range would be 46 to 57 months, and because Mr. Agby didn't have any criminal history, that this court would likely impose a sentence of 46 months because that's what most defendants receive, or a lot of defendants receive. Okay, but you recognize that's contrary to what the district court said. I do. But then also I submit that if the court were to sentence him to 57 months regardless, then that particular sentence would be greater than necessary with respect to sentencing defendants. So, it's not just harmless error, and I think that, again, Your Honors, I believe that the trial court would likely sentence Mr. Agby to 46 months at the bottom end of the sentencing range without the enhancement being in play. With respect to the government's theory about the incident, there were two people that testified at the sentencing hearing. The first person that testified was Special Agent Moore, and the second person that testified was Josiah Agby. Special Agent Moore didn't talk about the incident. In fact, I believe his testimony was that he didn't know anything about the incident. And his testimony focused more on the fact that his sources believed that the police report was false. So that only meets the second part of the government's theory. The first part of the government's theory was that the incident didn't happen, and Josiah Agby discussed more of that in her testimony. Ms. Agby said that she vividly recalled the incident taking place. She remembered the aftermath of how that affected Mr. Agby's sister and his mother, and then she heard Mr. Agby tell his mother and sister to go to the authorities. Now, what happened after that, we're not sure. We know that Mr. Agby told his mother and sister to go to the authorities. A police report was prepared and was sent over to the defense as we were preparing to respond to the government's motion in limine. And the government did not refute Ms. Agby's testimony, and we believe because the government didn't meet its own theory that there was no willfulness to obstruct justice, and this court should remand this matter for re-sentencing. Okay, we'll give you a minute on rebuttal. I know you wanted to save a little time, Mr. Tatum. Thank you, Your Honor. Mr. Miller, we'll hear from you. Good morning, Your Honors, and may it please the Court. Matthew Miller on behalf of the United States of America. This court should affirm the convictions and sentence for Mr. Agby because at the trial below there was sufficient evidence for a rational jury to convict Mr. Agby of fraud and conspiracy offenses, and because the district court properly applied the obstruction of justice sentencing enhancement based upon the counterfeit document that Mr. Agby submitted. Let's start with the obstruction of justice enhancement. Mr. Agby did willfully attempt to deceive the district court by filing the false Nigerian police report, and he did that, as the district court noted, as a last-minute attempt to salvage his duress defense. On appeal, Mr. Agby is arguing that the government never established that that report was fake in the first place, but that's simply not true. Below, the evidence established that Senior Special Agent Moore with the Secret Service passed that report along to his colleague in South Africa. That colleague has a working relationship with Nigerian officials, and through that relationship he was able to determine that the report was fake. That email chain was provided to the district court, and that was enough for the court to find by a preponderance of the evidence that the report was fake. Now, much of the discussion today has been about... Sentencing by hearsay email, right? Your Honor, at a sentencing hearing the rules... I know the rule is that, but you've got to give some... Even within that rule, you've got to determine a certain... Well, wait, you ought to give something. Did the district court do that? Absolutely, Your Honor. So initially, the rules of evidence don't strictly apply at a sentencing hearing, but also let's remember that the standard is simply preponderance of the evidence. So what the district court had was live testimony from Special Agent Moore about Special Agent Chervenak in South Africa and how Special Agent Chervenak has a working relationship with Nigerian officials. And then second, the district court had that email chain from Special Agent Chervenak where he directly and explicitly stated that Nigerian officials had determined the report was false. No reason why they thought it was false, right? Correct. The record doesn't get into the details of the investigation. So would it have been better to have Special Agent Chervenak flown in and testify about what happened? Absolutely. Would it have been better to have a Nigerian official flown in and testify about that investigation? Even better if the Nigerian official had said what they had done to determine it was false. Absolutely, Your Honor. There's no question that this could have been stronger. But again, the standard was simply preponderance of the evidence, and at this stage, we're looking at clear air on the factual findings. So when we combine the live testimony of Special Agent Moore along with that. That's the important point. There was something else besides that email, right? Correct, Your Honor. We have the testimony of Special Agent Moore. That's right. And then we can even add on to that the suspicious timing that my colleague talked about. And the district court saw the suspicious timing. He experienced the suspicious timing. Absolutely, Your Honor. Mr. Ogbe was charged by criminal complaint in May of 2019. This story about threats to his family didn't come out until nearly three years later. All of a sudden, one month before trial, when his back was against the wall because the government had precluded him or was attempting to preclude him from raising the duress defense, did he suddenly manifest this police report? The district court thought that was beyond suspicious. And if we take a close look at the timeline, Mr. Ogbe had a proffer in November of 2019. So these events, the threats, they allegedly happened in March of 2019. So we're just a little bit after that. We're in the same year. So these events, if they truly happened, they would have been fresh on his mind. He had counsel with him in the proffer, and yet at no point during that session did he say anything about these threats. And in a proffer, a defendant is incentivized but also required to be completely forthcoming and honest. This was a perfect opportunity for Mr. Ogbe to talk about these threats if they had really happened. So because of that suspicious timing, the live testimony, the email chain, the district court was in a very proper and well-supported position to apply the enhancement. But as Your Honor noted, even if this court has some concerns and thinks that it might have been error, this court should look at the government's harmless error argument. Well, and there's another dimension to this too that's been on my mind. So at the time of the sentencing, when Judge Ripple, in your colloquy, is exposing, the government did come forward and offer testimony about it. In response to that testimony, was there anything that inhibited the defendant at that time from making a showing as to where the report came from, how they got the report, why they believed the report was authentic and the like? I'm not talking about flying people in from Nigeria, but I'm just making a minimal showing as to why they had a good faith belief it was an authentic law enforcement report. Correct, Your Honor. There was nothing preventing that from happening. In this case, it would be pointless to remand this case for resentencing even if this court has some concerns. Because as Your Honor noted, the sentencing judge was very clear that even if the court had sustained Mr. Ogbee's objections to the guidelines, it would have imposed that same sentence of 57 months. You didn't say an awful lot about that, did you? Well, when we look at what's required, this court has noted that for a harmless error to apply here, there has to be a detailed explanation of the basis for the parallel result. And so there are essentially two sub-conditions there. One, the inoculating statement has to be detailed, meaning the court has to give specific attention to the disputed issue. And two, the statement has to explain the basis for the parallel result. And the district court checks both boxes here. How does it tell me about why you think he did? To me, I'm having some problems with this. So for the first condition, what this court has explained is that the inoculating statement has to give specific attention to the issue. So it's not enough for the district court to say, if I was wrong in the guidelines, I would impose the same sentence. That's just a statement thrown in for good measure. But here, the district court explicitly said, if I had sustained Mr. Ogbee's objections to the guidelines, including, and the court listed some, one of them was obstruction of justice, he would have imposed the same sentence based upon his 3553A analysis. Is that all the district judge has to do under our precedent? Your Honor, we believe that that is enough, and we would direct the court to United States v. Skaggs, that's 25F4494. It's a 2022 case. In that case, the defendant had been charged with production and possession of child pornography. And the district court erroneously believed that under the statute, the defendant was facing a mandatory life imprisonment sentence. But the district court noted that even if it wasn't mandatory, it would impose life imprisonment. Skaggs overruled Loving? No, Your Honor. I'm just providing one analogous case that the court can look to. It seems, you know, I'm a little concerned about it, and I'm more concerned now that the government is giving that line of cases such a charitable reading. It sounds to me like we're talking out of both sides of our mouth, and you're taking advantage of it. No, Your Honor. We're simply looking at the precedent and the language that this court has provided. So, in Skaggs, the district court noted that it would impose the same sentence based upon, and I quote, the seriousness of the conduct. And this court believed that that was a sufficient inoculating statement. And as part of its analysis, it noted that the life imprisonment was within the properly calculated guideline range. So that wasn't the end of the analysis, but it was part of the analysis. And the same is true for Mr. Ogbee. Even if obstruction falls away, 57 months remains within the guidelines. And let's remember, when the district court was engaged in its 3553A analysis, it's clear that it was deeply disturbed about Mr. Ogbee's conduct. It noted that Mr. Ogbee committed a despicable offense that involved preying on the vulnerable. His criminal conduct resulted in the destruction of families. The amount lost by the victims was significant. The court made very clear that it thought a sentence of 57 months was appropriate. Of course, if we believe the district court was correct in giving the enhancement, this is all overtaken by events, right? We don't need to get into the whole question of harmless error. Correct, Your Honor. Okay. If there are no further questions, we ask that the court affirm. Okay. Mr. Miller, thanks to you. Mr. Tatum, we'll give you a minute on rebuttal here. Thank you, Your Honors. Regarding the argument pertaining to the sophisticacy of the evidence pertaining to Mr. Ogbee's convictions, we'll go ahead and rest on our briefing pertaining to that issue. In sum, Your Honors, the government's argument that if the incident didn't take place, then Mr. Ogbee should have known that the police report is fake, that's not specific intent. That's a general intent argument. Your Honors, this court in United States versus Somalia, this court looked at the fact that those particular defendants in that case, they submitted clearly false documents within their prosecutions. And because they submitted those documents that were clearly false, the court had determined that they had committed obstruction of justice. Here, there was argument presented at sentencing about the police report that was submitted. If this court were to go in to review the record, that particular police report is certified and it's a public record. And I think that has all the indication of reliability, same as the reports and stuff that this court would find here in the United States. Now, the government could have investigated whether or not the incident had taken place. As a matter of fact, the defense had moved and asked for a video deposition of Mr. Ogbee's sister so we could bring these facts to light, but the government pushed back on that. And because they pushed back on that, they didn't want to know whether or not the incident took place. And then with regard to timing, Your Honors, the government, they put Mr. Ogbee's defense into question when they submitted their motion in Lemonade to preclude him from submitting the offense. And I don't think there's a better time to argue about your defenses than when you're preparing for trial. And because of that, we think the government is punishing Mr. Ogbee for trying to exercise his constitutional rights and we're asking for this court to remand this matter for resentencing. Thank you. If there are no further questions, I'll take my seat. Mr. Tatum, thanks to you. I see here that you were appointed by the court to represent Mr. Ogbee, correct? I was, Your Honor. Okay, the court very much thanks you, thanks your firm. We appreciate your advocacy on behalf of Mr. Ogbee and we'll take the case under advisement.